ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY *v.* WELLS.

Opinion delivered January 21, 1907.

1.   CARRIER—LIMITATION OF COMMON-LAW LIABILITY.—A carrier can not by special contract limit its common-law liability for losses not occasioned by its own negligence where it does not afford the shipper an opportunity to contract for the service required without such restriction.   (Page 472.)

2.   SAME—WHEN RESTRICTION OF LIABILITY INVALID.—Where a shipper, on tendering livestock for shipment, is offered a bill of lading containing restrictions, it is immaterial that the carrier has another and unrestricted contract which the shipper might have used if the carrier's local agent refused to give him an unrestricted bill of lading.   (Page 472.)

3.   SAME—PRESUMPTION FROM LOSS OF LIVESTOCK.—The rule that where a shipper of livestock accompanies the car in which the stock is transported, and has charge thereof, there is no presumption of negligence against the carrier arising merely from the death of the animal, has not been altered by act of March 26, 1895, p. 64, requiring carriers to furnish shippers of livestock free transportation to and from the point of destination.   (Page 475.)

4.   SAME—LIABILITY FOR LOSS OF FREIGHT.—In the absence of special contract, a carrier of freight is responsible for all losses except those occasioned by the act of God or the public enemy.   (Page 476.)

Appeal from Washington Circuit Court; *J. S. Maples,* Judge; affirmed.

*L. F. Parker* and *B. R. Davidson,* for appellant.

1.   There was not sufficient evidence of negligence to warrant a recovery, and the court's instruction upon the presumption of negligence from the fact of the animal's death was erroneous. 50 Ark. 397; 34 Ark. 383; 39 Ark. 523; 40 Ark. 375; 44 Ark. 208; 52 Ark. 26. The presumption is that the injury was from the viciousness of the stock. 5 Am. & Eng. Enc. of L. (2 Ed.) 471 and notes.

2.   The shipment was made under a valid written contract limiting the liability of the carrier, and under this contract no recovery could be had. Kirby's Digest, § § 6802-4 and 6809. Plaintiff had no right, when the rates are fixed by the railroad commission and required to be posted, to accept the statement of the agent, if made. It was not within the apparent scope of the agent's authority, and was not binding on the company.

71 Ark. 552. If plaintiff accepted the lower rate and acted upon it when there were two rates, it would be binding, even if it had been signed without his knowing the contents. 50 Ark. 397; 71 Ark. 185. Under the agreement the recovery is limited to $100. It was a reasonable contract, and its terms are binding. 46 Ark. 236; 63 Ark. 331.

3. The stipulation in the contract limiting the time in which to bring suit to six months after the cause of action accrued is binding, and this action is thereby barred. 4 S. W. 571; 14 S. W. 913; 24 S. W. 918; 21 Wall. 264; 4 Elliott on Railroads, § 1512; 85 Fed. 986.

4. Appellee being limited by the contract to a recovery of $100, the court erred in its instruction to the jury fixing the damages at the market value of the jack in Monticello. 112 U. S. 331.

5. The court erred in giving contradictory instructions.

E. S. McDaniel, for appellee.

1. Appellee did not rely nor sue upon the live-stock contract, but upon appellant's common-law liability. Appellant set up this special contract, and the burden was upon it to show a valid contract, such as would relieve it from liability. 69 Ark. 256.

Since, as is shown by the evidence, appellant's agent was furnished by the company with but one form of contract to execute the shipment of live stock in carload lots at the time of receiving this live stock from Wells, the latter had no choice between this contract limiting the liability of the carrier and one such as it was the duty of appellant to furnish in the absence of a special agreement, and the case falls within the rule laid down in 57 Ark. 112; Id. 127.

2. The contention that no presumption of negligence arises against appellant because the jack was at the time in possession of appellee is not tenable under the law in force at the time of the injury. Kirby's Digest, § 6700. By the terms of that act appellee was entitled to passage as a shipper in consideration of the price paid for the car.

3. The contract being unfair and unreasonable, the measure of damages was the market value of the jack at Monticello. 63 Ark. 443; 74 Ark. 597.

McCULLOCH, J.   This is an action against appellant railroad company to recover the value of a jack, alleged to be of the value of $240, shipped over defendant's line from Fayetteville to Van Buren, Arkansas, there to be delivered to a connecting carrier.   It is alleged in the complaint that by reason of negligence of defendant's employee in the operation of the train the jack was killed while in transit and before arrival at Van Buren.   The action was commenced more than a year after the shipment and death of the jack.

The defendant filed an answer denying that its servants were guilty of any negligence or that the jack was injured while in transit.

As a further defense the written contract for shipment entered into between plaintiff and defendant limiting the liability of the carrier in consideration of reduced rates for transportation was set forth and pleaded; and it was alleged that by the terms of said contract it was stipulated, among other things, that in the event the jack should be damaged or killed the liability of the carrier for the damage should not exceed the value stated in the contract, $100, and that no action against the defendant to recover damages should be maintained unless commenced within six months next before the cause of action should have accrued. The contract was introduced in evidence, and it contained the stipulations named above, as well as further recitals to the effect that the company offered the shipper two rates on shipments of live stock, and that the shipper elected to accept the reduced or lower rate under a contract limiting the liability of the carrier.

The plaintiff testified that before he signed or accepted the contract he asked the agent of the company if he had any other contract, and the latter replied in the negative, and that he accepted the contract because he could secure no other.   This was contradicted by the agent, who testified that the higher rates on all shipments of live stock, according to value, under bills of lading or contracts containing no limitation of the carrier's liability, were allowed by the company; that he had no other printed form of contract prepared for shipments of live stock, but that he could by interlineation, etc., alter an ordinary bill of lading containing no limitations of liability so as to provide

another form of live-stock contract, whenever a shipper elected to accept a higher rate under such contract.

The jury returned a verdict in favor of the plaintiff, assessing the damage at the sum of $267.08, and the defendant appealed.

It is contended on behalf of appellant that appellee was bound by the contract limiting the liability of the carrier, even if he was denied the benefit of any other contract of rate, and that the recitals of the contract to the effect that he had elected to accept it in consideration of the reduced rate precluded him from proving that the company's agent had refused to give him any other contract or rate. This court held in *Railway Co.* v. *Cravens,* 57 Ark. 112, that (quoting the syllabus) "a carrier can not by special contract limit its common-law liability for losses not occasioned by its own negligence where it does not afford the shipper an opportunity to contract for the service required without such restriction; and it is immaterial that the shipper knowingly accepted a bill of lading containing such restriction, without demanding a different contract, if he knew that the carrier's agent had no authority to make any other contract with him." In the case at bar the undisputed evidence is that the carrier had another rate to offer the shipper, and the contract recited that fact, but there is evidence tending to show that the local agent refused to give the shipper the opportunity to make any other contract than one restricting the liability of the carrier. Now, it matters not how many different rates or forms of contract the carrier is willing to give to the shipper; if the local agent with whom the latter deals denies him the opportunity to take advantage of the more favorable contract on a higher freight rate, or, what amounts to the same thing, informs him that there are no other terms or conditions upon which he can have his property transported, then there is in fact no opportunity afforded to contract for shipment on unrestricted terms, and the restrictions are void.

The contract for a limited liability of the carrier must be based upon the consent of the shipper upon a valid consideration, and, no matter what the contract contains by way of recitals or stipulations, if no opportunity for unrestricted service is afforded, then it is imposing the restricted contract upon the

shipper without his consent. If no opportunity for shipment on other terms was in fact given, then the recitals of the contract were false in stating that such opportunity had been given, and that the shipper had elected to accept a restrictive contract upon a lower rate. If the contract was in fact extorted from the shipper by a refusal to transport his property upon any other terms, he was not bound by false recitals which it may have contained. No rule of evidence was violated in permitting him to show the falsity of such recitals.

Mr. Justice HEMINGWAY, in delivering the opinion of the court in the Cravens case, said: "But it is said that if the party knowingly consents to a special contract, no one else can object, and that he can not be heard to say that it was unfair, or that an advantage was taken of him, since he acted freely and intelligently. This, as we have seen, is a mistake, for such contracts affect the interests of the public, and are subject to public regulation; and, besides, the circumstances do not warrant the assumption of fact that the party consented freely, but rather show that he submitted to terms that he was bound to accept, when the other party deprived him of the opportunity to choose between them and the contract which the law entitled him to demand. For he was, as we have seen, as much entitled to be indemnified against loss in transit as to the service demanded. The law imposes no necessity for an election between the two rights, and the carrier can impose none. But the carrier's refusal to perform the service without a release of his liability takes away the right to choose, which the law gives, and forces an election between rights which are not inconsistent."

It may be said that, inasmuch as a railway company can generally deal with the shipper only through its local agents, and when it has prescribed different rates for shipments upon different terms, the application of this rule would deprive the company of the power to enforce its contracts, and make the validity of its contracts for shipment depend upon oral proof in each case as to what transpired between the shipper and the local agent. So it may; but, on the contrary, any other rule would allow the company to extort from the shipper a contract without his consent, by reciting in the written instrument that he had been offered other terms, and had exercised his choice.

When the special contract was found to be invalid, all

question as to limitation as to value of the property and the time for bringing the action passed out of the case. *St. Louis, I. M. & S. Ry. Co.* v. *Coolidge,* 73 Ark. 112; *St. Louis, I. M. & S. Ry. Co.* v. *Marshall,* 74 Ark. 597.

It is also contended that the evidence was insufficient to warrant the jury in finding that the plaintiff applied to the agent for the privilege of shipping upon different terms, and was denied the opportunity. The plaintiff testified that, to the best of his recollection, he asked the agent or employee with whom he dealt, and who prepared and signed the contract, for another contract, and that he received a negative reply—that he had no other alternative but to accept this contract. This was denied by the agent or employee in question, and, as already stated, it was conclusively shown that another rate had been prescribed for shipments on unrestricted terms, but that question was submitted to the jury, and we think there was sufficient evidence to sustain the finding.

The court, over the defendant's objection, gave the following instruction, which is assigned as error, viz:

"1. If the jury find that the defendant received the jack for shipment, and the same was killed while in the defendant's car, the presumption is that such killing resulted from the negligence of the defendant, or its servants, in the operation of its locomotive or cars."

This instruction was erroneous, for the reason that it left entirely out of consideration the contract between the parties for the shipment of the stock. By the terms of the contract, the shipper was required to accompany the shipment of live stock and be in sole charge of it for the purpose of attention and care to it. It further provided that the carrier should not be responsible for attention to and care of the stock, but should only be liable for actual negligence of its employees in the transportation of the freight. If the contract was in force, which was a disputed question, then the defendant was not liable unless its employees were guilty of negligence; and where the shipper accompanied the car and had charge of the live stock, there was no presumption of negligence arising merely from the death of the animal. *St. Louis, I. M. & S. Ry. Co.* v. *Weakly,* 50 Ark. 397. In that case the court said: "Having

the care of the stock, the liability of a common carrier, which makes it his duty to account for the loss of freight, did not devolve on appellant. Being in charge, they (the shippers) were presumed to know the cause of the loss of the jack found dead, if either party to the contract does; and the burden of proof is upon them to show that the default or negligence of appellant was the cause, before they can be entitled to recover."

Counsel for appellee contends that the rule announced in that case is changed by the act of March 26, 1895 (Kirby's Digest, § 6700) requiring railroad companies, when they receive shipments of poultry or live stock by the carload, to furnish to the shipper or his employee free transportation to and from the point of destination. We do not think that this statute changes the rule at all. It only makes it compulsory upon the carrier to furnish free transportation to the shipper for himself or employee when the shipment is in carload lots. The statute does not undertake to change the liability of the carrier in any other particular or to alter the rules of evidence respecting the establishment of its liability.

Whilst the instruction just quoted is an erroneous statement of the law, it was not prejudicial in this case. The jury, in arriving at a verdict in favor of the plaintiff for the sum named, necessarily found against the validity of the contract; for the court instructed them, at the request of the defendant, that, if they found the shipper had notice of the two rates fixed by the company and chose the lower rate, then the contract was binding on him, the cause of action was barred by limitation, and he could not recover. The jury could not, under the instructions given by the court, have found for the plaintiff for a sum in excess of $100, without first finding that the contract was not in force. So, treating this question as eliminated by the verdict of the jury, the instruction now under consideration was harmless. It told the jury, in substance, that if they found that the jack was killed in the car while being transported by defendant, a presumption of negligence on the part of the defendant arose. This is not a correct statement, as we have already seen. But, with the special contract out of consideration, the carrier was liable as an insurer of the safe transportation and delivery of the freight—it was responsible for all losses except those oc-

casioned by the act of God or the public enemy; and when it appeared that the animal was killed while in transit, it devolved upon the carrier, in order to exonerate itself from liability, to show that the loss resulted from one of those causes. *St. Louis, I. M. & S. Ry. Co.* v. *Weakly, supra.*

In the absence of a special contract limiting the liability of the carrier, it is responsible as an insurer, and the burden is not upon the plaintiff, in an action to recover for loss or damage, to show that the same did not result from the act of God or the public enemy.

We find no prejudicial error in the record, and the judgment is affirmed.

BATTLE, J., dissenting.