ARKANSAS WESTERN RAILWAY COMPANY *v.* ROBSON.

Opinion delivered July 12, 1926.

1. CARRIERS—TRANSPORTATION OF LIVE STOCK—JURY QUESTIONS.— Issues, in an action against a carrier, as to the condition of cattle when received, as to their condition when delivered, as to whether this condition was caused by the carrier's negligence, and as to the market value of the cattle, were for the jury.

2. CARRIERS—CONCLUSIVENESS OF BILLS OF LADING.—Bills of lading are not conclusive of their recitals, because they evidence both a receipt of the articles and a contract for carriage, since, as receipts, they may be explained, and as contracts of carriage they are to be construed according to their terms.

3. EVIDENCE—BILL OF LADING—PAROL EVIDENCE TO EXPLAIN.—Notation on a bill of lading concerning the condition of cattle received for shipment may be explained by parol evidence, as they pertain to that part of the bill of lading which constitutes a receipt.

4. EVIDENCE—PAROL EVIDENCE OF FRAUD OR MISTAKE IN WRITING.— Evidence tending to prove that notations on bills of lading relat-

ing to the condition of cattle when received for shipment were placed thereon after the bills were signed *held* admissible as tending to show fraud or mistake in such notations.

5. CARRIERS—BILLS OF LADING—EFFECT OF SIGNING.—Where shippers were given opportunity to read bills of lading before signing them, they are bound by them, so far as they express the terms of the contract of shipment.

6. CARRIERS—NEGLIGENCE IN CARRIAGE OF LIVESTOCK—BURDEN OF PROOF.—Shippers who accompanied cattle had the burden to show that damage to the shipment was due to the railroad's negligence, where the bill of lading stipulated that they take care of the stock while being transported, and hence an instruction placing the burden on the carrier to show that damage was not caused by its negligence was erroneous.

Appeal from Scott Circuit Court; *John E. Tatum,* Judge; reversed.

*Joseph R. Brown* and *James B. McDonough,* for appellant.

*A. F. Smith,* for appellee.

WOOD, J. This is an action by the appellees against the appellant to recover the sum of $845, damages alleged to have accrued to the appellees by the alleged negligent handling of cattle which the appellees had delivered to, and which were accepted by, the appellant, for shipment from Waldron, Arkansas, to Nowata, Oklahoma. The appellees alleged in substance that, after accepting the cattle for shipment, the appellant disregarded its contract to ship the same in safety to their destination, "handling the same in a manner so rough and with such carelessness and negligence that 26 head thereof arrived at their destination dead;" that 18 head were steers of the value of $35 per head, that three head were bulls of the value of $30 per head, five were cows of the value of $25 per head, making a total valuation of $845, for which the appellees prayed judgment.

The appellant denied all the material allegations of the complaint, and set up as affirmative defenses that whatever injury was done to the cattle was due wholly to their poor and weak condition, of which the appellant's agents were not aware at the time the animals were

accepted for shipment; that the animals were shipped in violation of the quarantine laws and regulations of the United States and of the Interstate Commerce Act. The appellant also set up the contract of shipment providing that the carrier shall not be liable for damage to the animals as caused by the default of the shipper or owner or agent thereof, and shall not be liable where the owner has overloaded or crowded the animals for shipment, and alleged that the damage was caused solely by the default of the shipper in failing to care for the animals during and after shipment. The appellant attached to its answer a copy of the contract of shipment, and alleged that its agent was without knowledge that the quarantine regulations of the United States had been violated at the time he received the animals for shipment, and that such agent indorsed on the contract of shipment that the animals were poor and weak, and were received for shipment at the risk of the appellees. The appellant further alleged that the appellees failed to comply with the provisions of the contract requiring notice to be given the appellant of injury to the live stock.

After the testimony had been adduced by the respective parties, the appellant asked the court to instruct the jury to return a verdict in its favor, which the court refused, and this is the first ground of appellant's contention that the judgment should be reversed. Counsel for the appellant argue that the undisputed testimony shows that the cattle were not delivered and accepted by the appellant in good condition, and that the appellees wholly failed to show that the appellant was negligent in the handling of the cattle, and wholly failed to prove the amount of their damages. These were purely questions of fact, and it suffices to say that the testimony on these issues was sufficient to sustain the verdict.

Fleming, one of the appellees and owners, testified in substance that the cattle, when they arrived at Waldron for shipment, were good, thrifty cattle. None of them manifested any weakness in driving or dipping. They were poor, but they had been fed corn, clover hay and

oat hay and every kind of feed that would strengthen them.

G. W. Robson, another one of the appellees and owners, testified that the cattle were in good average condition, and well fed. They were as good as any cattle at that time of the year. None of them were any weaker or poorer than ordinary cattle. He did not observe anything at all in loading or shipping that would indicate that the cattle were weak. The witness went with the cattle. They were handled very well until they got to Sallisaw. He stated that it was the roughest train he ever rode on, and that he had shipped quite a few cattle in his life. He was asked what he meant by the train being handled roughly, and answered, "I suppose in jerking the engine." A railroad man came along where this witness was lying down in the caboose, and said, "If you don't want to get knocked into the wall, you had better get up from there." He was afraid that the witness might go through the wall if he didn't get up. When the cattle arrived at their destination, one car was in a very bad condition. Part of the cattle were killed, part of them bruised, and a few piled up over each other— some dead. They did not appear as though they had horned or injured each other. This witness was asked if the cattle had been moved in violation of the United States quarantine laws, and answered that he obtained permission from the supervisor of the quarantine regulations to move the cattle from Pope County to Scott County. If he had not obtained permission from the Federal authorities, he would not have moved the cattle. The cattle were certified out in a manner satisfactory to the railroad agent and also to the agent of the Government.

Other witnesses for the appellees testified that they saw the cattle when they were being driven through the country on the way to the station at Waldron, and that the cattle seemed to be in fair condition for the season. One witness stated that, taking them as a whole, they were a fair bunch of cattle. He didn't see any weak ones

in the bunch. He remembered seeing some nice ones. Another witness stated that he would have considered it a good bunch of cattle for the time of the year. None of them manifested any signs of weakness in driving them. They got to Waldron one day, were dipped the next, and were shipped the next day. ·The testimony of the appellees was to the effect that, at the time they signed the waybills, they were in a hurry, and didn't observe any notations on the waybills or bills of lading. They denied the testimony of the appellant's station agent as to the notations that the cattle were poor and weak being on the waybills at the time they signed the same. They stated that they had no knowledge of any notations. It could serve no useful purpose to set out in detail and discuss further the testimony of witnesses for the appellees.

The testimony of the appellant's station agent at Waldron was to the effect that he issued the bills of lading evidencing the shipment. These bills of lading are sometimes called live-stock contracts. These four bills of lading were signed by the appellees in witness' presence. He had placed certain notations on these bills of lading at the time they were signed by the appellees. He discussed the condition of the cattle before they were accepted, and he stated that one of the appellees told him that the cattle were poor and weak and some of them too weak to be shipped. Witness agreed to accept the cattle that were too weak to be shipped if they would place the same in one car. This was done, and witness placed on that car the notation, "10 cows, 6 steers, loaded under protest on account of being poor and weak." On the issue as to the value of the cattle, there was testimony on behalf of the appellees tending to prove that the steers and bulls were worth from thirty to thirty-six dollars per head and that the cows were worth twenty dollars per head at Nowata, Oklahoma.

1. The court did not err in refusing appellant's prayer for a directed verdict. As to whether or not the cattle, at the time they were received, were in good con-

dition, and as to whether or not they were delivered at their destination in a bad condition, and as to whether or not this condition was caused by the negligence of the appellant, as well as the issue as to the market value of the cattle, were all questions of fact which the appellees were entitled to have submitted to the jury. Bills of lading are not conclusive of their recitals, because they evidence both a receipt of the articles and a contract for carriage. As receipts, they are susceptible of explanation and may be contradicted. As contracts for carriage, they are to be construed according to their terms. The notations on these bills of lading were concerning the condition of the cattle when they were received for shipment; and pertained to that part of the bill of lading which constituted a receipt and not to that part constituting a contract for carriage. See *Prescott & Northern Ry Co.* v. *Davis,* 126 Ark. 366, 191 S. W. 210; *Little Rock & Fort Smith Ry. Co.* v. *Hall,* 32 Ark. 699. The testimony therefore as to the notations on the waybills and bills of lading as to the condition of the cattle was susceptible of explanation, and the parol testimony on that issue was permissible for that purpose. Furthermore, the testimony of the appellees tending to prove that the waybills were presented to them and required to be signed by them when they had no opportunity to examine the same, and that they had no knowledge of any notations being placed thereon, was sufficient to submit the issue to the jury as to whether these notations were on the waybills and bills of lading at the time same were signed by the appellees. This testimony was competent on the ground that, if these notations were placed on the waybills and bills of lading after they were signed by the appellees, such notations were a fraud on their rights, and they were not bound thereby, and it was relevant for them to prove the circumstances under which these written instruments were signed as tending to prove fraud or error in these notations. To be sure, if the circumstances were sufficient to warrant the conclusion that the appellees were given an

opportunity to read the bills of lading, then they would be bound by the written instruments so far as they expressed the terms of the contract of shipment. See *St. L. I. M. & S. Ry. Co.* v. *Weakley,* 50 Ark. 394, 8 S. W. 134; *Prescott & Northern Ry. Co.* v. *Davis, supra.*

2. Among other instructions, the court gave the following at the instance of the appellees: ''You are further instructed that the burden is upon the defendant company to prove by a preponderance of the evidence that the cattle were killed by their own inherent vices, weakness and natural propensities to injure each other, and not upon account of the negligence or carelessness of the defendant company.'' The court erred in giving this instruction. In *St. Louis-San Francisco Ry. Co.* v. *Wells,* 81 Ark. 469, 99 Ark. 534, we held, quoting syllabus, ''the rule that, where a shipper of live stock accompanies the car in which the stock is transported, and has charge thereof, there is no presumption of negligence against the carrier arising merely from the death of the animal, has not been altered by act of March 26, 1895, p. 64, requiring carriers to furnish shippers of live stock free transportation to and from the point of destination.''

The bills of lading or live-stock contracts for shipment in this case contain, among other, the following provision: ''The shipper, at his own risk and expense, shall load and unload the live stock into and out of cars, except in those instances where this duty is made obligatory upon the carrier by statute or is assumed by a lawful tariff provision. In case any person shall accompany the live stock in charge of same, he shall take care of, feed and water the live stock while being transported, whether delayed in transit or otherwise,'' etc. Under the provisions of the bills of lading and the admission by the appellees that they accompanied these cattle in the shipment, the burden was upon the appellees to prove that the injury and damage sustained by the appellees resulted from the negligence of the appellant's servant. *St. L. I. M. & S. Ry. Co.* v. *Weakley, supra; St. L. I. M. & S. Ry. Co.* v. *Wells, supra.* The court erred there-

fore in granting appellees' prayer for instruction No. 7. It cannot be said that the uncontroverted testimony shows that the injury to the appellees' cattle and the resultant loss and damage was caused through the negligence of appellant's servant. This was an issue for the jury under the evidence, and should have been submitted under instructions which placed the burden upon the appellees to prove negligence, instead of upon the appellant to exonerate itself from the charge of negligence.

We find no other reversible error in the record, but, for the above, the judgment is reversed, and the cause is remanded for a new trial.