TRUCKER'S EXCHANGE, INC. *v.*
BORDER CITY FOODS, INC.

CA 98-1433 998 S.W.2d 434

Court of Appeals of Arkansas
Division I
Opinion delivered September 8, 1999

*Sexton & Fields, P.L.L.C.,* by: *William Kropp III,* for appellant.

*Warner, Smith, & Harris, PLC,* by: *G. Alan Wooten* and *Kathryn Stocks Campbell,* for appellee.

ANDREE LAYTON ROAF, Judge. Trucker's Exchange, Inc., appeals from a judgment awarded to appellee, Bor-

der City Foods, Inc., for damages Border City suffered when its customer rejected a load of frozen chicken transported by Trucker's Exchange because the seal placed on the refrigerated trailer had been broken during shipment. The trial court found that Border City established a course of dealing or usage of trade that explained or supplemented the bill of lading issued by Trucker's Exchange so as to require delivery with the seal intact. On appeal, Trucker's Exchange argues that the trial court erred in 1) finding that it breached the shipment contract because delivery with the seal intact was not an express term included on the bill of lading; and 2) finding for Border City when Border City's improper loading of the shipment was the proximate cause of its damages. We find no merit to either argument and affirm.

Between April 11th and May 23rd of 1997, Border City obtained the services of Trucker's Exchange to transport shipments of frozen poultry parts. On May 23, 1997, Trucker's Exchange agreed to transport a load of poultry from Fort Smith to Seaboard Farms in Elberton, Georgia. Border City loaded the goods and placed a seal on the rear door of the trailer as required by the buyer. The bill of lading issued by Trucker's Exchange did not make mention of the seal but contained a serial number that both parties acknowledged to be the designation of a seal. Trucker's Exchange arranged for one of its agents, Gregory Trucking, to deliver the goods. During transit, the driver of the truck heard the load shift, pulled over, and broke the seal to inspect the product and restack it if necessary. The driver discovered that a portion of the load had been improperly loaded by Border City and had fallen onto the floor. After determining that he was unable to restack the product, the driver proceeded to Seaboard Farms to deliver the load.

Upon arrival, Seaboard Farms rejected the entire load when it found that the seal had been broken and that some of the parts had fallen onto the trailer floor. Seaboard Farms sent Border City a letter explaining the reason it rejected the shipment. Border City condemned that portion of the shipment deemed contaminated from falling on the trailer bed and reprocessed, repackaged, and resold the remainder of the chicken at a reduced price.

Border City invoiced Trucker's Exchange for $15,240.86, the difference between the amount it received from the salvaged chicken and what Seaboard Farms was to have paid for it. Trucker's Exchange refused to pay, and Border City filed suit. Trucker's Exchange filed a counterclaim for $16,150 in unpaid shipping charges owed to them. After a bench trial, the judge awarded Border City $14,190.06, the amount of its damages less the value of that part of the shipment lost due to improper loading, and awarded Trucker's Exchange its unpaid shipping charges, resulting in a net award to Trucker's Exchange of $1,959.94. Trucker's Exchange appeals from the award to Border City.

 In reviewing a bench trial in circuit court, we do not reverse a judgment unless we conclude that the trial court erred as a matter of law or if we decide that its findings were clearly against the preponderance of the evidence. *Santifer v. Arkansas Pulpwood Co.*, 66 Ark. App. 145, 991 S.W.2d 130 (1999); *Riffle v. United Gen. Title Ins. Co.*, 64 Ark. App. 185, 984 S.W.2d 47 (1998). Disputed facts and determination of the credibility of witnesses are within the province of the judge, sitting as the trier of fact. *Ford Motor Credit Co. v. Ellison,* 334 Ark. 357, 974 S.W.2d 464 (1998).

Trucker's Exchange first argues that Border City failed to prove that delivery with the seal intact was a material term of the agreement and consequently failed to establish that breaking the seal was the proximate cause of its damages. Trucker's Exchange contends that, in construing the contract between the parties, the trial court must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain, ordinary meaning, and that the bill of lading failed to indicate that delivery with the seal intact was a material term of the contract. In response, Border City contends that ample evidence supports the findings of the trial court and refers to the evidence of trade usage it introduced during trial; specifically, Border City avers that it is commonly accepted in the trucking industry that trucks with seals on them are to be delivered with the seal intact. In awarding judgment to Border City, the trial judge found "that there is a custom in the industry, particularly in the poultry and fresh meat business, of having chicken delivered with the seal unbroken."

■ A bill of lading operates as both a receipt and as a contract. *Arkansas Western Railway Co. v. Robson,* 171 Ark. 698, 285 S.W. 372 (1926); *St. Louis, Iron Mt. & S.Ry. Co. v. Citizens Bank of Little Rock,* 87 Ark. 26, 116 S.W.154 (1908). Generally speaking, Article 7 of the Uniform Commercial Code (U.C.C.), codified as Ark. Code Ann. § 4-7-101 et seq., governs disputes and interpretations involving bills of lading.[1] However, Article 1 of the U.C.C. contains general provisions and definitions used throughout the code. Section 1-205, codified at Ark. Code Ann. § 4-1-205, provides:

(1) A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.

*(2) A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation, or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage are to be proved as facts. If it is established that such a usage is embodied in a written trade code or similar writing the interpretation of the writing is for the court.*

*(3) A course of dealing between parties and any usage of trade in the vocation or trade in which they are engaged or of which they are or should be aware give particular meaning to and supplement or qualify terms of an agreement.*

(4) The express terms of an agreement and an applicable course of dealing or usage of trade shall be construed wherever reasonable as consistent with each other; but when such construction is unreasonable express terms control both course of dealing and usage of trade and course of dealing controls usage of trade.

(Emphasis supplied.) Comment 7 to this section indicates that subsection three does not require "universality" of the practice or custom, but rather the "regularity of observance" of the practice.

---

[1] We note that the Federal Bill of Lading Act somewhat diminishes the significance of Article 7's provision concerning bills of lading covering the interstate transportation of goods but, except as discussed below, primarily concerns the negotiation of bills of lading as commercial paper. See 49 U.S.C. § 80101 et seq.; White & Summers, *Uniform Commercial Code* § 29-2 (1995).

Generally, bills of lading are to be construed strictly against the carrier and favorably to the shipper, and the language used is subject to the general rules of construction which govern other contracts. 13 Am. Jur. 2d § 280. Course of dealing or usage of trade that explains or supplements a contract is considered competent evidence of the parties' intent and can become a part of a contract. *Precision Steel Warehouse v. Anderson-Martin,* 313 Ark. 258, 854 S.W.2d 321 (1993). If the usage was known to both parties or so widespread in the industry that the contract would be presumed to have been made with reference to it, it becomes a part of the agreement. *Id.* (citing *Sharpensteen v. Pearce,* 219 Ark. 916, 245 S.W.2d 385 (1952); *Ben F. Levis v. Collins,* 215 Ark. 172, 219 S.W.2d 762 (1949)).

During trial, Border City introduced the testimony of its employees, Pam Stewart, Dale Worthy, and Milton Smallwood, all of whom had experience in the poultry industry. Collectively, they testified that Trucker's Exchange had been informed of the need for shipments to Seaboard Farms to be delivered with the seal intact and that it is the custom in the industry that poultry shipped under seal always be delivered with the seal intact. Bruce Miller, John Gregory, and Arthur Brumfiel, employees of Trucker's Exchange, testified on its behalf. They testified that they had not been informed of the need for delivery with the seal intact, that this requirement should have been reflected on the bill of lading if it was material to the contract, and that their driver's decision to break the seal was reasonable under the circumstances, in that some of the boxes of chicken had shifted due to Border City's failure to properly load the truck.

Here, the trial judge heard the testimony, weighed the credibility of the witnesses, and found the testimony of Border City's witnesses persuasive concerning trade usage. The existence and scope of such usage are to be proven as facts. Ark. Code Ann. § 4-1-205(2). Given that the findings of disputed facts and the determination of the credibility of witnesses are within the province of the trial judge who has the opportunity to observe the witnesses during trial, we cannot say that the trial court erred in finding that Border City established that it was accepted custom in the poultry industry that products shipped under seal should be

delivered with the seal intact. *Ford Motor Credit Co. v. Ellison, surpa.* Consequently, we affirm on this point.

■ ■ Trucker's Exchange next argues that the trial court erred in awarding Border City damages when the evidence did not support a finding that Trucker's Exchange was responsible for the damages, but rather that the negligence of Border City was the proximate cause of any damages it sustained. However, the record reflects that Seaboard Farms stated that it would not have rejected the entire load had the seal not been broken. Moreover, the trial court reduced the award to Border City by the value of the chicken lost due to improper loading. Accordingly this argument is without merit. Trucker's Exchange's also argues that the driver had the obligation to exercise reasonable diligence in inspecting and transporting a shipment on a common carrier; this argument is likewise without merit. Although 49 C.F.R. § 392.9 does state that a driver must regularly inspect the cargo during transit, as Border City points out, this section is not applicable because of the provision contained in subsection (4):

> The rules in this paragraph do not apply to the driver of a sealed commercial motor vehicle who has been ordered not to open it to inspect its cargo or to the driver of a commercial motor vehicle that has been loaded in a manner that makes inspection of it impracticable.

Clearly, a driver is not under the same obligation to inspect the cargo when it is shipped under seal.

■ Trucker's Exchange also contends that under the Federal Bill of Lading Act, the shipper is liable for damage caused by its own improper loading. However, upon review of the abstract and the record, it does not appear that this was raised to the trial court, consequently, we may not address the issue on appeal. *Reynolds v. Shelter Mut. Ins. Co.,* 313 Ark. 145, 852 S.W.2d 799 (1993); *Gentry v. State,* 47 Ark. App. 117, 886 S.W.2d 885 (1994).

Affirmed.

BIRD and PITTMAN, JJ., agree.