ARKANSAS STATE HIGHWAY COMM'N *v.*
RUSSELL C. ROBERTS ET UX

5-5443                                    464 S. W. 2d 57

Opinion delivered March 8, 1971

*Ken Brock,* for appellant.

*Gordon, Gordon & Eddy, Guy H. Jones* and *Clark, Clark & Clark,* for appellees.

CARLETON Harris, Chief Justice. This is the second appeal of an eminent domain proceeding instituted by the Arkansas State Highway Commission, appellant herein, against Judge Russell C. Roberts and Violet Lee Roberts, his wife, for the acquisition of a 9.63 acre tract of land in Conway needed for right-of-way purposes for the construction of Interstate Highway No. 40 and its

facilities in Faulkner County, Arkansas. Judge Roberts and two expert witnesses testified on his behalf, the landowner testifying that just compensation for the taking of the the 9.63 acres was $129,750.00, Lloyd Pearce testifying that just compensation amounted to $105,750.00, and James Larrison, the second expert, testifying that just compensation was $114,500.00. According to these witnesses, the Roberts acreage was valuable for two purposes, the highest and best use for the front 200 feet (3.03 acres) being for commercial property, and the highest and best use of the remaining 6.37 acres being multifamily residential. The land said to be suitable for commercial use had a value, according to Pearce of $67,100, or $22,145 per acre. Pearce said that the property had 660 feet of frontage 200 feet deep on Highway 65 which was zoned for commercial use. He described a usable frontage of 610 feet, leaving a 50 foot right-of-way as access to the rear of the property, and he estimated that the frontage had a value of $110.00 per front foot. The land said to be suitable for multi-family residential, according to Pearce was .worth $37,650 or $5,910 per acre. This part of the property, the back 460 feet, was zoned for residential use, and Pearce said that it would support 135 units for multi-family residential purposes. The witness stated that in 1966, the traffic count along the highway was 5,000 vehicles per day, and that this constituted an increase of 600 per day over the year 1965. According to Larrison, the acreage commercially valued (the witnesses agreed on the amount of land that was best suited for each purpose) was worth $75,900 or $25,050 per acre, and the multi-family residential was valued at $34,445, or $6,035 per acre. As to the commercial value, Larrison valued the front 200 foot depth at $115.00 a front foot, and, as to residential, he said there was a need in Conway for 360 additional family units.

Two experts on behalf of the state testified that, in their view, just compensation would amount to $24,000.00 and $27,500.00 respectively. On trial, the jury returned a verdict in the amount of $113,300.00, and from the judgment so entered, appellant brings this appeal. For reversal, five points are asserted by the department, but

under the view that we take, it is not necessary that all of these points be discussed.

Background of the litigation is set out in the second and third paragraphs of the first opinion, *Arkansas State Highway Commission* v. *Russell C. Roberts, et ux,* 246 Ark. (June 9, 1969), 441 S. W. 2d 808, as follows:

"Some description of the property and its location is essential to an understanding of the case. On the date of the taking, June 6, 1966, the Roberts tract, approximately square, lay about a mile north of the Conway central business district. The tract was bounded on the south by U. S. Highway 65. At the back of the property, away from the highway, it sloped upward steeply to a ridge 60 feet higher than the front of the tract. The improvements consisted of a four-room house, a barn, and three stock ponds, but no witness attributed any value to the improvements in arriving at an estimate of just compensation for the land. [1]

U. S. Highways 64 and 65 are of critical importance throughout all the testimony. The two routes run northward together from downtown Conway to a point about a quarter of a mile southwest of the Roberts tract. At that point there is a "Y" by which No. 65 diverges in an easterly direction and No. 64 diverges in a westerly direction."

As stated in the earlier case, the principal issue is the substantiality of the testimony offered on behalf of appellees; there are many similarities in the testimony in both cases, and a great deal of what we have said in *Arkansas State Highway Commission* v. *Russell C. Roberts, et ux, Supra,* is likewise applicable here. As in the first case, all of the appellees' witnesses used only one method of reaching their conclusions—that of comparable sales, and the first requirement in using this method is that the sales must be comparable before they are even admissible in evidence. *City of Little Rock*

[1] Likewise, in the instant litigation, no witness on behalf of appellees attributed any value to these improvements.

v. *Sawyer*, 228 Ark. 516, 309 S. W. 2d 30. In *Arkansas State Hwy. Comm. v. Witkowski*, 236 Ark. 66, 364 S. W. 2d 309, it was pointed out that important factors in determining whether a sale is comparable are location, size, sale price, conditions surrounding the sale of the property, business and residential advantages or disadvantages, and whether the land is unimproved, improved, or developed land. At the first trial, appellees' experts only mentioned one sale involving land on Highway 65 said to be comparable to the Roberts property, and we quickly disagreed that this sale was indeed comparable. We disagreed also that four other sales offered by appellee as to commercial value, were comparable, and the language used in rejecting those sales is applicable to some of the sales used in the present case. For instance, in addition to pointing out that all parcels were on Highway 64 rather than Highway 65, we pointed out that the sales "were in a small area that had already been developed to commercial use." That is true of three of the sales offered by appellee in the present litigation. Draught to Kerr McGee, about ½ acre, Rogers to Farmer's Fire Insurance Company, about .14 of an acre, and Threshing to Central Arkansas Production Credit Assn., about an acre, were all sales in a small area, within the city limits, *that had already been developed for commercial use.* Three other sales, all outside the city limits, *in an undeveloped area,* were also used. The largest tract involved was a sale from Carter to Burford, and it only contained approximately an acre. The other two only contained approximately ½ acre and 1/3 acre respectively. All three were vacant at the time they were sold, except that one contained a small residence, which was considered of no value. Pearce and Larrison testified that they made adjustments in the differences between the lands covered in the sales mentioned, and the land owned by Judge and Mrs. Roberts, in finding the properties to be comparable. These adjustments included such factors as topography, utilities, size and shape, access, surrounding area, etc. It is at once evident that comparing all of these factors, finding the Roberts property better in some respects, and not as good in others, is rather a complicated process, particularly when some of the

comparable sales used differ substantially from some of the other sales used, *i. e.,* some were in the city limits, (3) in highly developed commercial districts, while others were out of town, (3) with no zoning, sewer, police, or fire protection. Apparently the witnesses then averaged the sales to reach their figures. This seems to us to be a matter, on the one hand, of using sales that were dissimilar to the Roberts property, because the lands (used for comparison) sold were more valuable, and on the other hand, using sales which were dissimilar because the lands were not as valuable, bringing the one group down, and the other group up, in order to reach a comparable figure.[2] That this was done is evident from the testimony. Mr. Larrison testified "By taking the six sales which we have considered and striking an average, we come up with $125 a front foot. Now in applying this to the subject property, I considered we already had 610 feet of effective property, 200 feet deep, so in placing my value on this property I said 660 feet at $115 which is the same thing as saying 610 feet at $120." This explained the figure that he had reached on the property valued for commercial use, $75,900. Of course, it is entirely proper for an expert to reconcile differences in the sales used and the principal property, particularly if there is no property in the vicinity actually comparable in nearly all respects, but one noticeable, and somewhat confusing fact here, is that some of the properties used as comparable were not at all comparable with each other, and the points of dissimilarity, between these separate tracts and the Roberts lands greatly varied from one extreme to another. As an example, let us say that the principal property is C. The expert compares C with A, which is in a highly developed area, finding some points of similarity and some dissimilar points. He then uses B, lands in an undeveloped area, which also bear some similarities to C, but of an entirely different nature from A, the dissimilarities also being of a different nature. Using these properties for comparison, he reaches the conclusion that A is worth so much *more* per land measure than C; likewise he reaches the conclusion

---

[2]The Roberts property was found to be more valuable than four tracts and less valuable than two.

that B is worth so much per land measure *less* than C. He then takes this analysis, hits an average, and uses the average to arrive at a value for C. Bear in mind that the comparison made by appellees' experts involved going through a similar process in six sales rather than two.

Mr. Pearce added a rather unusual basis in support of the value of the front portion of the lands for commercial purposes. He testified that the back portion of the property would support 110 units of multi-family residential use, and then stated:

"When we are speaking in terms of 110 units of multi-family residential use which could very easily be located on the land *we create a need by the erection or construction of those 110 units for commercial facilities such as a barber shop, beauty shop, small sundry shop.* [Our emphasis]"

This is what is known as "begging the question", which is simply basing a conclusion upon a fact not yet proved.[2a] Of course, the 110 units are not already there, and filled to capacity, a fact which will be subsequently discussed.

As previously stated, all sales used were on Highway 64. Mr. Larrison was questioned about this on cross-examination as follows:

"Q. Are you telling the jury that there were no sales of commercial properties comparable to the Roberts property on Highway 65 and that you had to go clear down to Highway 64 east of Conway to get comparable sales?

A. If there were any sales of comparable size on

---

[2a] Also defined as "founding a conclusion on a basis that needs to be proved as much as the conclusion itself." *Johnson* v. *Hall, Secy. of State,* 229 Ark. 400, 316 S. W. 2d 194.

Highway 65 they were not comparable in location. I couldn't see them.[3]

Q. You have any explanation to the jury as to why you had all these sales out on 64 for all these high prices and not one single sale on Highway 65 for four years?

A. There were some sales on Highway 65 right at the "Y" but I have been instructed by our attorney not to consider them.

Q. Why were you instructed not to consider them?

MR. JONES: I think that is a question of law, purely of law. We will object to that question. We think it is an improper question.

THE COURT: Overruled.

A. Because of the Supreme Court ruling in the prior trial of this case. They instructed me in their opinion that the Supreme Court has said these sales were not admissible in evidence.

Q. All right. The sales of the property or these properties were exactly like the property you have used on Highway 64 are they not, in size, in development and in what they are being used for?

A. Well, I won't split hairs."

Of course, one cannot help but wonder, if property on 65 was so valuable for commercial purposes, why there were no sales.

Four sales were used by witnesses in reaching the values testified about for the 6.37 acres considered for

---

[3] There is an incongruity in this testimony for Mr. Larrison stated that if there were any sales of comparable size on Highway 65, they were not comparable in location. Yet, along with Mr. Pearce, the sales actually used were neither comparable in size or location.

multi-family residential. Three of these sales were in a developed residential area, one being located on Clifton Street, one on Cleveland Street, and the other on Independence Avenue. All were on paved streets, all had utilities, and were zoned multi-family use. Two of these were within 500 feet of Hendrix College, one being right across the street. Two of the three are less than ½ an acre, and the other is less than an acre. The fourth sale referred to was that of Western Bell Motel, located at the intersection of Highway 64 West and Washington Street, a well developed area. Less than ½ an acre was involved, and the property had sixteen units when it was sold. In stating that these properties were comparable, the same procedure was used as with the commercial property, already outlined. Appellees did make a better case in this phase of the litigation than in *Arkansas State Highway Commission* v. *Russell C. Roberts, et ux, Supra,* in that testimony was offered relative to a need for rental housing units. Dr. Harold Love, Chairman of Special Vocations at State College of Arkansas, testified that in 1966 there was a very strong demand for rental housing units near the college, not only for graduate students, but for faculty members as well. He stated that although there had been many apartments built in the last few years, the rental charge was too high for graduate students. He said that since 1966, there had been one large multi-housing unit built by the college, and that a small one had also been constructed; however, he said that the large unit was not always full and, as a matter of fact, probably was about only 60% full, the reason being that the unit was too expensive. He added that he thought $1,000.00 per acre was a rather high price for land upon which multi-housing units would be built, and that he was not testifying that rental housing could be built on the Roberts land, only that there was a need in 1966 that was not met. Mr. Wilburn Smith, business manager for Hendrix College, testified that since 1963, he had not found it easy to find proper rental quarters for new faculty members, and he agreed that in early 1966, there was a strong demand for rental housing units in the city of Conway. He said that the student enrollment increased by approximately 100 to 150 from 1963 to 1966, and had increased from

1966 to the present by approximately 250 students; that during the three year period between 1963 and 1966, there would have been an increase of 18 faculty members. As to the last group, Mr. Smith admitted that no one had failed to find a place to live, and he also said that Hendrix student housing was not full; that he was not saying that there was a demand for student housing. The witness said he knew nothing about the Roberts property.

Judge Roberts used the same sales as his two experts. His evaluation of $129,750.00 was the same as that in the first case. The Roberts property is already zoned for multi-family units, and has a 660 foot frontage on the highway; however, 50 feet will have to be used for a private service drive into the proposed complex. Judge Roberts said that the property was purchased in 1945 for the sum of $1,750 or $175.00 per acre. The three ponds on the Roberts property occupy about an acre, the largest of these being about six feet deep. All of the ponds are located in the "commercial area" of the property.[4] As previously stated, the witness did not go into detail in explaining the valuations he had reached, but he did say that he was not familiar with any piece of property in the area that was zoned commercial on the front and residential on the back that could be used for multi-family structures; subsequently he stated that the property was the only piece of property in the city limits of the city of Conway, relative to size, topography, location and utilities, that could be developed on June 6, 1966 (date of the taking) in the manner testified about. Judge Roberts, strictly speaking, was correct in this statement, but the evidence reflects that there are two other pieces of property *on Highway 65* which are almost in the same category. One of these is a ten acre tract adjoining the Roberts property on the west, the distinctive difference being that this latter tract is not right on the highway.[5] The

---

[4]These would of course, have to be filled in.

[5]This property was sold in 1963, in a sale of DuVall to Meadowwood Builders for a consideration of $15,500, reflected by cash, and the trade of a house. Mr. Larrison stated that he did not consider this sale because it was not "an arm's length market transaction", although testimony on the part of the state indicated to the contrary.

other is a sale from Berry to McCracken and Wilson which took place on November 30, 1961; this tract is composed of 16 acres, fronts along the same highway, and has the same zoning as the Roberts property, with commercial on the highway frontage and residential on the back part.[6]

While it appears that in the instant case appellees' experts have gone into more detail in endeavoring to show comparability of the subject property with the properties used in comparison, we cannot agree that this effort was entirely successful.[7] The reason can be stated in one simple sentence, *viz,* there are *too many differences* to support the award given. In Vol. 5, *Nichols on Eminent Domain,* 3rd Edition, Sec. 21.31 (1), it is said:

"The location of the property sold must be considered, and evidence of the price paid at sales of other land, to be admissible in a land damage case, must be confined to land similarly situated and of the same character as that taken; and, as a general proposition, to land in the same neighborhood. It cannot be said, however, as a matter of law how large an area, in feet or blocks, constitutes a neighborhood, and no hard and fast rule can be laid down on the subject. In large cities 'neighborhood' is a relative term, and the field which a witness may take into consideration in forming an opinion of the selling price of land in the vicinity of a particular property, should not only be reasonably adjacent thereto, but it should be of the same general character as the immediate locality in which such property is situated. In sections of a city devoted to residences, or to retail trade, proximity to some desirable or undesirable point may affect values so greatly that one piece of land may be worth twice as much as another a hundred feet away. In determining the value of land

---

[6]This property sold for $875.00 per acre, but Mr. Larrison testified that he did not consider this sale, because he considered no sales before 1962, as they were too remote.

[7]It is interesting to note that, though entirely different sales were used in this case for comparison with the Roberts property, Pearce reached the same identical value figures reached in the first trial.

in such sections the court should be very strict in its requirements of proximity as well as of similarity."

It is obvious from what has been said, that we consider the proof offered as to both commercial value and value as a multi-family apartment to be completely inadequate to support the amount of the judgment.

It is asserted that the trial court erred in overruling the motions of appellant to quash the special jury panel selected to try this cause. It was first contended by the department that two jury commissioners did not have the qualifications prescribed by law since they were county officers, and accordingly, could not possess the same qualifications as petit jurors, a necessary requirement for jury commissioners under Ark. Stat. Ann. § 39-201 (1969 Supp.). Appellant's complaint is based on the fact that the two were Democratic Central Committeemen for Faulkner County. Appellant is in error. We have held that County Central Committeemen are not officers in any sense except to be answerable to mandamus proceedings. *Park* v. *Kincannon, Judge,* 214 Ark. 398, 216 S. W. 2d 376.

It is also contended that Act 568 of 1969 was applicable to this cause and that the jury should have been selected under the provisions of that act. Since any further trial would unquestionably come under the provisions of the act, there is no need to discuss the point further.

As pointed out at the outset, this is the second appeal of this case. This type of litigation is expensive, as well as time consuming, and we recognize that it may be difficult to locate many tracts of land that are really comparable. As earlier mentioned, the evidence offered relative to the multi-family unit use is stronger than at the first trial. Accordingly we have carefully examined the evidence and are of the view that it properly supports approximately 50% of the judgment entered. Hence, we think that an award of $57,000.00 is proper under the evidence, and that the judgment should be reduced from $113,300 to $57,000. See *Arkansas State Highway*

*Comm.* v. *Dupree,* 228 Ark. 1032, 311 S. W. 2d 791; *Arkansas State Highway Comm.* v. *Watkins,* 229 Ark. 27, 313 S. W. 2d 86.

The judgment is affirmed on the condition that remittitur is entered as indicated within seventeen calendar days; otherwise, the judgment will be reversed and the case remanded for a new trial.

FOGLEMAN, J., concurs.

JOHN A. FOGLEMAN, Justice, concurring. Once again I feel compelled to say, as I did in my concurring opinion on the first appeal, that the court is applying an improper standard in determining substantiality of expert opinion evidence on the market value of real estate. What I said in that opinion on this score I reiterate. Little involved on this appeal can be said to be controlled by the law of the case on the first appeal. The witness whose testimony was then treated did not testify at the second trial. Pearce used entirely different references to arrive at the opinion he expressed on this trial. The expert witnesses dutifully avoided consideration of sales which this court said were not comparable as a matter of law. One of these was on Highway 65, but this court said in the earlier opinion that the purchase was speculative. The others were eliminated because they were located in a small area that had already been developed to commercial use along another highway where traffic was nearly double that on Highway 65, upon which appellees' property is located.

A new approach to comparable sales was taken by Pearce and by Judge Roberts in the second trial. James Larrison, who testified at the second trial, did not testify at the first one. He did give regard to the inhibitions of the majority opinion on the first appeal. These witnesses endeavored to use other sales and to show in what respects the lands differed and the adjustments necessary to compensate for the differences. Unless the witnesses are permitted this latitude this case will never be terminated or the compensation due the property owner never determined unless he agrees to accept some arbitrary figure at which we may arrive with even less

substantial foundation than the testimony of any of the witnesses. The reason is that no witness has yet produced a valuation based upon a sale of lands actually comparable under the strict test of similarity being imposed by the majority.

It is strange to me that the majority can concede, as it does, that, strictly speaking, Judge Roberts is correct in his statement that, on the date of taking, this property was the *only* property in the city limits relative to size, topography, location and utilities that could be developed in the manner stated as its highest and best use, *i. e.*, commercial development along the highway and multifamily residential on the rear, and then apply such a strict rule in testing the basis of expert opinion evidence. The same strict test would totally eliminate from consideration sales of those tracts the majority finds *almost* in the same category. Those tracts were similar only in size and proximity in one case and proximity only in the other. Yet, for valuation purposes they might as well have been miles away.

The Berry to McCracken and Wilson sale involved property just across the highway from the subject property. Neither Pearce nor Larrison considered it because both considered the sale date of November 30, 1961, too remote. Is the majority saying this qualified expert is wrong as a matter of law? Time of sale is one of the important considerations in determining pertinence of sales date. See Annot. 118 A. L. R. 869, 887 (1939); 85 A. L. R. 2d 110, 149 (1962); 27 Am. Jur. 2d 331, Eminent Domain, § 429. Larrison testified that, while there is other land all along the highway, it would be difficult to develop because the terrain varies so sharply, and in addition it was not similarly situated as to availability of utilities. Utilities were admittedly not available to the Berry tract at the time of the sale. It consisted of 16 acres, not ten. Property south of the highway dropped off so sharply in elevation it was said to be difficult to develop. Every one of these dissimilarities would inevitably result in a much, much lower market value than that which would otherwise prevail.

I am astounded that, under the strict standards stated by the majority, it can say that the adjoining 10-acre tract is almost in the same category as the property involved. Perhaps this treatment arises from its considering the property as if it were "on Highway 65." The nearest any witness comes to placing this tract on this highway is the statement that it "corners" on the highway, which I submit may or may not be true when all the testimony and exhibits are considered. It fronts on a gravel street. It does not take an expert to know that, insofar as value for commercial development is concerned, it might as well be at least a mile away. Appellant's expert admitted the importance of highway frontage for commercial development. One of appellant's witnesses called this sale very comparable "to a degree." There is a conflict in the testimony as to whether that property has been zoned. There is at least some question as to whether true consideration for the sale is shown when a developer trades a house or other building for land. In other words, the builder might be willing to forego his profit (and the potential tax liability) in order to obtain land for which he might well be willing to pay an even higher cash price.

But, as I see it, these similarities and differences are matters that should be determined: first, by experts whose knowledge, training and experience qualify them to have opinions in such matters; second, by the trial judge who must exercise discretion in deciding the appropriate latitude to be allowed the experts in comparing sales under conditions prevailing in the vicinity of the property and the nature, characteristics and highest and best use of the property involved; and, third, by a jury properly selected and impaneled. This court should engage in weighing "comparability" by viewing similarities and dissimilarities and their effects only when there has been a clear abuse of the trial court's discretion.

In spite of the esteem in which I hold my brethren and the great respect I have for them and their many talents and great knowledge, I do not feel that any of us is as well positioned to make these determinations as are the experts who actually live in the real estate

market place, the trial judges who have the responsibility for determining the qualifications of the experts and the latitude which must be given them under prevailing market conditions in the particular locality or the jury, which is to judge weight and credibility. If this court progressively eliminates from consideration sales we decide are not comparable it will soon be demonstrated that there are no sales of lands comparable to appellees' under such strict standards.

I would refer the majority to a statement appropriate to this particular situation in 4 Nichols on Eminent Domain, Third Edition, 94, § 12.311[3], where it is said:

> It must be remembered, however, that the comparison is made with lands which are *similar* to the land taken. Of course, since, in fact, no two parcels are exactly alike, only such parcels may be compared where the dissimilarities are reduced to a minimum and allowance is made for such dissimilarities. It is, therefore, imperative to consider such differences as may exist in the physical and environmental conditions and a proper allowance made to cover any differential that may exist by virtue of the difference in the time of the sales. It is evident that there may be considerable difference in the size, shape, situation, and immediate surroundings of two estates, and perhaps in other respects, and yet the price which one brought may be of substantial assistance in determining the value of the other. There may be general considerations applicable to both alike which largely affect their value and render it proper that the price paid for one should be considered in arriving at the value of the other, nothwithstanding the differences between them.

No useful purpose would be served by my detailing each of the specific similarities and the various factors appellee and his witness enumerated. I think the majority, in declaring sales relied upon by appellee and his witnesses not comparable as a matter of law, has overlooked important evidence in the case, which at least

leaves a question of fact having a great bearing upon the proper latitude to be allowed expert witnesses in making comparisons. The highest and best use of the property is one of these factors. Some others of which there was at least substantial evidence are:

1.  The ability of anyone traveling by automobile to reach any other place in the city within five minutes.

2.  The proximity of commercial developments on the highway east of the property.

3.  The availability of the property for 110-135 units for multifamily residential purposes.

4.  The demand for 360 such units in Conway.

5.  The unavailability of other tracts for this use, making this property unique because of zoning, availability of utilities, etc.

Because of these factors it was only natural that value witnesses consider properties that were bought and sold for development for multifamily residence use and for highway commercial use, making appropriate adjustments for dissimilarities. The necessity for making appropriate deductions because of certain dissimilarities in certain sales and appropriate additions because of other dissimilarities in others is so usual and obvious that I cannot see why it should prove confusing in this case. Nor can I understand where there is anything unusual about finding that availability of the back part of the property for multifamily residences added to, or even created a demand for, commercial sites on the highway frontage which would affect its value. It is an obvious fact that suburban and perimeter development property is being purchased and developed on this premise every day in almost every city in America. The desirability of this type of housing in a complex including small shopping centers has even presented a problem to those seeking to preserve downtown busi-

ness centers. We can't be blind to this established fact accompanying the urbanization of our society.

I will have to agree that the case must be reversed. The witness Larrison virtually admitted that, in his opinion, those sales along Highway 64 to which he gave great weight in evaluation of the Roberts highway frontage were almost exactly like the sales which the court held noncomparable as a matter of law on the first appeal. Under the law of the case, this deprives his testimony, as to that part of the land, of substantial support. Furthermore, it seems to me that the witnesses once again failed to satisfactorily *explain* the extent of the effect of various factors upon market value. When a witness says that by making various adjustments for factors which he enumerates, he arrives at a value of $156 per front foot, it is hard to comprehend how he can then arrive at a value of $110 per front foot, as did Pearce, on the property taken. Pearce also failed to explain how he came to the conclusion that the property was worth $148 per front foot, or 88% of the value of the sale by Rogers to Farmers Fire Insurance Company, except to say that it was based on adjustments for time, location, traffic, topography, physical characteristics, utilities, size and shape, highest and best use, access to the property and neighborhood and surrounding property. The fact finders had no way of knowing how much of this difference was attributable to time or any other one of the factors for which he made adjustments, or how he arrived at the adjustment for any one factor. Certainly, the expert witness did allocate some definite figure to each one of the factors and had some process of reasoning for his allocation. Why did he not come out with 87% or 89%, for instance? The same infirmities appear with reference to sales influencing Pearce's decision as to value of the remainder of the property. How did he adjust values, *e. g.*, from 54 cents per square foot to 14 cents per square foot, or $750 per unit to $350 per unit, or an average of 49 cents per square foot, or $800 per unit or $26,000 per acre to 14 cents per square foot or $350 per unit or $6,050 per acre? The only explanation I find is that the difference of $450 per

unit would "take care of the minuses" by allowing $49,500 (based on 110 units) for street and land work and earth work that would be required on the Roberts property. Yet he does not say how this relates to cost of the work or give any other reason for arriving at the figure of $450.

Larrison also said that his difference of $400 per unit would balance out the minuses by allowing $4,500 per acre for site preparation and service drive. Larrison also detailed the dissimilar factors connected with the commercial sales and said that some of these lands were better and some were worse than the Roberts land. He said, "All these percentage factors were added up and applied to the unit value paid for each of the comparable properties and then by multiplying percentage factors by the unit price paid for each of the sale properties, you come up with the adjusted value of the subject property by comparison." Yet he also failed to explain the percentage used with reference to any factor or to demonstrate how even one such calculation was made.

Judge Roberts testified that he used essentially the same sales as were used by his expert witnesses as the basis for his valuation of $129,750.

I have reservations about the offer of a remittitur. However extensively the record is examined, there just isn't any evidence showing a value of 50% of the judgment rendered, nor is there any attempt made by the majority to demonstrate how this figure was reached. Since appellees have an option in the matter, I do not see that they are harmed. Accordingly, I will merely refer to the reservations expressed in my separate opinion in *Arkansas State Highway Commission* v. *Carruthers*, 246 Ark. 1035, 441 S. W. 2d 84.