ARKANSAS STATE HIGHWAY COMMISSION *v.*
JAMES C. MARSHALL AND FRANCES MARSHALL

5-5989                                    485 S.W. 2d 740

Opinion Delivered October 9, 1972
[Rehearing denied November 13, 1972.]

*Thomas B. Keys and James N. Dowell,* for appellant

*Charles A. Walls, Jr.,* for appellees.

FRANK HOLT, Justice. Appellant instituted this eminent domain action for the acquisition of lands needed for the construction of a controlled-access highway facility. Appellant acquired 31.7 acres in fee from appellees' 60 acre tract of land leaving them four residuals of 5 to 15 acres each. Appellees' acreage consisted of lands which were either inside or adjacent to the city limits of Ward, Arkansas. Their lands fronted on both sides of a county road for approximately 2,000 feet. Appellees sought $42,125 as comp-

ensation for their estimated damages. The jury awarded $30,000. On appeal the appellant first contends for reversal of the judgment that the trial court erred in refusing to strike the after-the-taking value testimony of the landowners' expert witness, Lloyd Pearce, who based his opinion upon the assumption that by the condemnation in fee the condemnor acquired the right to completely prohibit access to and from the remainder of the abutting lands of the landowners. We find this contention untenable.

In its complaint, appellant alleges that it was necessary in the taking of said lands (for a controlled-access facility as defined by Act 383 of 1953) that the "rights or easements of access and ingress and egress thereto and therefrom be condemned by order of this court and title in fee to said lands be vested" in the appellant. The prayer of the complaint is that "all existing, future and potential common law or statutory rights or easements of access or ingress and egress to, from and across the described property to and from adjoining and abutting lands[be] condemned and extinguished under the power of eminent domain," reserving to the present and future owners or occupants of abutting and adjoining lands rights of access as may be prescribed under the provisions of Act 383 of 1953; further, that just compensation be ascertained and awarded to appellees for the condemnation for the taking of their lands and all access rights The appellees propounded to the appellant interrogatories among which the inquiry was specifically made as to the extent of the taking by the appellant. In response, appellant merely replied that it was condemning the lands in fee. Any inference of an intention to reserve any rights to the landowner here, attributable to any indefinite language of the complaint and answer to the interrogatory on the subject, is eradicated by the Declaration of Taking filed contemporaneously with the complaint. In clear and definite language, the appellant declared that it was completely taking all rights of access, ingress and egress to appellees' lands. In other words, the taking was unlimited. The proof was to this effect. In fact, one of appellant's witnesses, who is knowledgeable with respect to appellant's driveways permit requirements testified that the landowner of abutting lands does not have any right of access to a highway, (owned

in fee or easement by appellant) without first filing a request and having that request approved by the appellant and that a permit once issued could be revoked if found necessary by the appellant. Also, the judgment recites that the compensation awarded to appellees included "all rights of ingress, egress and access to the condemned lands." We hold that the trial court correctly permitted the value witness, Pearce, to testify he took into consideration that the free simple taking of appellees' lands is a factor which would reduce the market value of their lands because it would reasonably be expected to affect and impair the unrestricted right of the landowners' ingress and egress to his abutting residuals. This is permissible without ascribing a monetary value to this factor. We specifically approved this method of appraisal in *Arkansas State Highway Comm'n v. Wallace,* 247 Ark. 157, 444 S.W. 2d 685 (1969), and adhered to our view in *Arkansas State Highway Comm'n v. Wallace,* 249 Ark. 303, 459 S.W. 2d 812 (1970). In the first case we pointed out that under the terms of Ark. Stat. Ann. § 76-532 (Repl. 1957), the landowner's "unfettered" access would be subordinate to certain uses made of right-of-way taken in fee simple, and that the *nature* of the owner's access might be substantially impaired: that under § 76-548 (Repl. 1957) the owner from whom the property was taken in fee simple had no right of reversion and might find the right-of-way abandoned and sold to another owner; and that the "predominate" control of all lands within the right-of-way was in the Arkansas State Highway Commission. In the second case, we held that the lessened accessibility from one side to another of the severed property was a compensable element of damages and adhered to our holding in the first case. Again, we reiterate that the taking in fee, as in the case at bar, subordinates all rights of the landowner to the predominate control of all the lands within the right-of-way acquired by the appellant.

The mere fact that a fee simple title to lands is taken does not necessarily constitute a taking of the abutting owners' rights. We have previously recognized that a right of the abutting owner to access, ingress and egress is an easement which exists as fully when the fee title to lands is in the public as when it is in private ownership.

*Arkansas State Highway Comm'n* v. *Kesner,* 239 Ark. 270, 388 S.W. 2d 905 (1965). There we further recognized that the right of access is a property right for "which the owner cannot be deprived without just compensation." See, also, 2A Nichols on Eminent Domain, Third Edition, 243 § 6.4442. In the case at bar, appellees' lands and *access rights* to his abutting lands were taken in fee by the appellant to construct a controlled-access highway facility as defined by Ark. Stat. Ann. § 76-2202 (Act 383 of 1953):

> "A controlled-access facility is defined as a highway or street especially designed for through traffic, and over, from, or to which owners or occupants of abutting land or other persons have no right or easement, or only a controlled right of easement of access, light, air or view, by reason of the fact that their property abuts upon such controlled-access facility or for any other reason.***"

The rights of the abutting owners are inevitably affected in a material manner, not by the taking in fee simple alone, but the fact that the act authorizing the construction of a controlled-access facility provides for the impairment. Ark. Stat. Ann. § 76-2204 (Repl. 1957) provides:

> "***No person shall have any right of ingress or egress to, from or across controlled-access facilities to or from abutting lands, except at such designated points at which access may be permitted, upon such terms and conditions as may be specified from time to time."

From what we have said, it follows that we cannot agree with appellant's additional argument that we should reconsider our previous decisions on the question of compensation for impaired access which was established many years ago in *Arkansas State Highway Comm'n* v. *Union Planters National Bank,* 231 Ark. 907, 333 S.W. 2d 904 (1960).

Appellant, also, asserts as error that the trial court refused to strike the value testimony of the landowners' expert witness, D.P. "Bud" Young. Appellant makes the argument that this witness' testimony was based upon an improper standard, mainly the unwillingness of the landowner to sell. We agree with appellant that in a condemna-

tion action the market value is the price which could be agreed upon at a voluntary sale by an owner willing to sell and a purchaser willing to buy. *Arkansas State Highway Comm'n* v. *Stallings,* 248 Ark. 1207, 455 S.W. 2d 874 (1970). On cross-examination Young expressed the view that in a condemnation suit the owner is not a willing seller. He acknowledged that to some extent he took that into consideration. However, he, also, testified that because a landowner had to sell in a condemnation suit, it made no difference in "his figures" ascribed to the market value of appellees' lands. Even if it be said that this equivocal part of Young's testimony relating to a reluctant seller is prejudicial, it was rendered harmless by the court instructing the jury that "[Y]ou are instructed that the fact that the landowner is unwilling to sell his land has no effect upon the market value of the land." In the circumstances, any inconsistency in Young's testimony would be proper argument to the jury and would only affect the credibility of this witness. *Arkansas State Highway Comm'n* v. *Pruitt,* 249 Ark. 682, 460 S.W. 2d 316 (1971). In the case at bar, the witness demonstrated a familiarity with appellees' property and comparable sales of lands in the surrounding area.

Neither can we agree with appellant's assertion that the trial court erred in refusing to allow two of its expert value witnesses to testify as to the sales of property at other interchanges in ascertaining the value of the appellees' property after the taking. An interchange facility was constructed on a portion of the property acquired from the appellees. Appellant's two witnesses sought to testify that construction of an interchange facility is .beneficial and increases the value of appellees' residual property. We deem it unnecessary to discuss this alleged error other than to observe that the proffered testimony as to comparable sales related to lands at interchanges on interstate facilities. In the case at bar, the interchange is constructed upon a controlled-access highway facility and not interstate. We think this is a significant distinction. Therefore, one of the required factors in showing the similarity or reasonable resemblance of two tracts is lacking, namely, location. *Arkansas State Highway Comm'n* v. *Witkowski,* 236 Ark. 66, 364 S.W. 2d 309 (1963), and *Arkansas State Highway Comm'n* v. *Roberts,* 250 Ark. 80, 464 S.W. 2d 57 (1971).

Appellant, also, asserts that the court erred in modifying one of its instructions and giving two of the landowners' instructions. The brief argument is made that the instructions as given are confusing and misleading. We observe that the instruction defining a fee simple title is not to be recommended in an eminent domain case. However, suffice it to say that after reviewing these instructions along with all instructions given by the court we cannot agree with appellant's argument that the instructions had a confusing and misleading effect upon the jury.

Appellant, also, urges for reversal that the court refused to enter a judgment in accordance with the court's ruling that by taking the lands condemned in fee, the appellant acquired the right to eliminate all access without further compensation. We find no merit in this contention. As previously indicated, the pleadings, the evidence, and the judgment reflect that the appellees' lands and all access rights were taken in fee for which just compensation was awarded to them.

The appellant contends that the verdict is not supported by substantial evidence and is excessive. Appellant's argument appears to be predicated upon the premise that the landowner and their witnesses erroneously based their estimated just compensation upon a complete denial of access to appellees' abutting lands. Since we hold that the taking in fee included acquisition of access rights to the abutting lands, it necessarily follows that we find no merit in the assertion that the verdict is based on insubstantial evidence or is excessive.

Affirmed.