Wayne RIFFLE and Charles Mitchell a/k/a M.R. Properties, a Partnership *v.* UNITED GENERAL TITLE INSURANCE COMPANY and Wilson & Associates

CA 98-506                                                   984 S.W.2d 47

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered December 9, 1998

[Petition for rehearing denied January 13, 1999.]

*Grobmyer, Ramsay & Ross*, by: *Robert R. Ross*, , for appellants.

*Williams & Anderson LLP*, by: *Edie Ervin*, for appellee United General Title Insurance Company.

*Wright, Lindsey & Jennings LLP*, by: *Don S. Mckinney*, for appellee Wilson & Associates.

TERRY CRABTREE, Judge. Wayne Riffle and Charles Mitchell, a/k/a M.R. Properties, a partnership formed for the purpose of obtaining real property for recreational use, entered into negotiations with Helen Kilgallon and Marie Stagmer ("Sellers") for the purchase of property located along the Arkansas River near Scott, Arkansas. M.R. Properties agreed to purchase the property upon securing an easement for ingress and egress. To satisfy this condition, M.R. Properties, pursuant to an agreement between the parties, began by acting as an agent for the sellers and attempted to purchase an easement across neighboring landowners' property, but were unable to do so. M.R. Properties next proceeded as attorney-in-fact for the sellers and instituted suit in Pulaski County Court to have a public road declared across the land of adjoining landowners. During that action, an adjoining landowner produced a quitclaim deed, file-marked July 13, 1971, which granted an easement to and from the sellers' land. Because the quitclaim deed appeared to frustrate M.R. Properties' ability to prove "necessity" for a private road as required by Ark. Code Ann. § 27-66-401(3) (Repl. 1994), M.R. Properties abandoned

that action and began working with Everett L. Martin, an attorney for the sellers, in order to obtain title insurance so that they could go forward with the purchase of the property. After being assured that the title insurance would be issued, M.R. Properties closed on the property on October 12, 1994.

The title insurance was obtained through Wilson & Associates and underwritten by United General Title Insurance Company ("United"), the beneficiary of the policy being M.R. Properties. After the purchase, the adjoining landowner, across whose property the quitclaim deed's easement was described as running, refused to allow M.R. Properties access. M.R. Properties contacted Wilson & Associates to request assistance in obtaining access to the newly purchased property, but Wilson & Associates denied that coverage existed for that particular problem. M.R. Properties then instituted an action against the adjoining landowner seeking a declaratory judgment to enforce the easement found in the quitclaim deed. After a hearing, the Pulaski County Chancery Court determined that the quitclaim deed did not create an appurtenant easement nor an easement by necessity since there had been no common ownership of the property prior to its division, though the court did find that M.R. Properties had proven a need for access to the property. On appeal, the Arkansas Supreme Court affirmed the chancellor. See Riffle v. Worthen, 327 Ark. 470, 939 S.W.2d 294 (1997).

Demand was then made to United for the face amount of the policy, $20,000, on the theory that the property was a total loss since no access existed. The insurance company denied coverage, asserting, among other defenses, that the policy excluded coverage; and that M.R. Properties had failed to inform the insurance company about the ingress/egress problem. Appellants then brought suit against the insurance companies, resulting in this appeal.

By order of September 10, 1997, the trial court found, among other findings, that: three policy exclusions prohibited M.R. Properties' recovery; M.R. Properties had known about the defect in the right of access, yet went ahead with the closing on the property; the purchase price was reduced due to the lack of

access; and, M.R. Properties suffered no damages. A subsequent order was entered March 9, 1998, awarding United $10,000 in attorney fees.

M.R. Properties appeals from these orders, asserting four points for reversal: (1) that the trial court erred by holding that the appellants created, suffered, assumed or agreed to the defect of lack of access to the property and that by so doing were excluded from coverage under the policy; (2) that the trial court erred in holding that the defect in the lack of access to the property was not known to the company, but known to the plaintiffs, and not disclosed in writing to the company prior to the date the claimant became an insured under the policy; (3) that the trial court erred in holding that no loss or damage resulted to the insured claimant; and, (4) that the trial court abused its discretion by awarding attorney fees to United General Title Insurance. We reverse in part and affirm in part.

Since this was a bench trial, in order for this Court to reverse, we would have to either determine that the trial court erred as a matter of law or decide that its findings were clearly against the preponderance of the evidence. *See Taylor v. Richardson, d/b/a Richardson Construction Co.*, 266 Ark. 447, 585 S.W.2d 934 (1979); Ark. R. Civ. P. 52.

Addressing appellants' last argument first, that the trial court abused its discretion by awarding attorney fees to United pursuant to Ark. Code Ann. § 23-79-208(a) and (b) (Repl. 1992), we note that United's brief concedes this argument to appellants in light of the recent Arkansas Supreme Court decision, *Village Market, Inc. v. State Farm Gen. Ins. Co.*, 334 Ark. 227, 975 S.W.2d 86 (1998), a holding making it clear that attorney fees cannot be awarded to an insurer under section 23-79-208. While acknowledging that *Village Market, Inc.* was handed down subsequent to the trial court's grant of attorney fees in United's favor, we are nonetheless bound to reverse the trial court on this point.

In regard to appellants' remaining points, because we find that appellants suffered no loss or damage by the failure to attain ingress to and egress from the property they purchased, we need only address one as the others are rendered moot.

The parties agree that there are no Arkansas cases that provide a measure of damages for litigants whose suits are founded upon disputes over title insurance claims and have arisen as a result of the litigant's inability to secure access to and from their recently purchased property. In this case, appellants presented evidence at trial showing that their cost for purchasing and acquiring the real estate amounted to $22,650. In addition, appellants testified that, at the time of the purchase and in order to protect their interests, they caused a title insurance policy, in the amount of $20,000, to be issued with themselves the named beneficiaries. After presenting this testimony, appellant Riffle then explained from the stand that, without access, the property was useless. Riffle placed the value of the property at zero dollars.

The trial court found that appellants purchased property that did not have a right of access to begin with, that the access problem was taken into account when negotiating the purchase price, and that appellants nonetheless went forward with the purchase, knowing that the problem of access had not been resolved. As a result, the trial court failed to find that appellants suffered any loss or damage.

Appellees argue that appellant Riffle admitted at trial that the property retains value by the fact that it could be reached by boat via the Arkansas river and that the property was purchased for recreational purposes and not for commercial development. Furthermore, appellees argue that the policy itself required the parties to calculate damages and that the $20,000 policy limit could not be recovered unless appellants proved that some defect reduced the value of the land. Stated simply, appellees contend that appellants failed to prove that they suffered damages. We agree.

While an owner of property may, in appropriate circumstances, testify as to the value of his/her property, *Minerva Enter., Inc. v. Howlett*, 308 Ark. 291, 824 S.W.2d 377 (1992), and while the right of access, in itself, may carry value, *see, e.g. Arkansas State Highway Commission v. Marshall*, 253 Ark. 212, 485 S.W.2d 740 (1972), the evidence of damages must be such as to allow findings from established facts and not by conjecture. *Christmas v. Raley*, 260 Ark. 150, 539 S.W.2d 405 (1976).

■ Appellants were well aware of the access problem when they decided to move ahead and purchase the property at issue. In fact, as the trial judge found below, the purchase amount tends to reflect due regard for·the problem of access. Appellants received what they bargained for and cannot now claim that they have suffered damages. Furthermore, appellants acknowledged that they do have access, though only by boat. Thus, in terms of calculating value based on access, this property does retain some value. Appellants have failed to present this Court with convincing proof, or argument, to support their contention that the chancellor's finding was erroneous as a matter of law or clearly against the preponderance of the evidence.

Finally, we note that the Pulaski County Chancery Court found appellants to have a need for a private road, thereby evidencing their satisfaction of an important element of Ark. Code Ann. § 27-66-401, authorizing the establishment of legal access. Thus, while appellants knew what they were getting into, they may still avail themselves of alternative statutory remedies and be relieved of the burden of not having access.

Reversed in part; affirmed in part.

NEAL and ROAF, JJ. agree.

AREY, JENNINGS, and ROGERS, JJ. dissent.

JUDITH ROGERS, Judge, dissenting. The appellants in the case at bar purchased property, and only after extensive litigation was it determined that they had no right of access to it. I must respectfully dissent from the affirmance of the trial court's finding that coverage for this loss was excepted under the terms of the title insurance policy.

Before discussing my reasons for dissenting, I must first clarify what the issue before us is, and what it is not. The policy in question insured against loss or damage sustained or incurred by the insured by reason of the "lack of a right of access to and from the land." The policy excluded from coverage defects, liens, encumbrances, adverse claims, or other matters "resulting in no loss or damage to the insured claimant." In its ruling, the trial court found only that appellants' claim was excepted because of this

*exclusion*, reasoning that appellants "purchased the property for $20,000 knowing it had no access." The trial court did not find that appellants had failed to meet their burden of proof as to the *amount* of damages they had sustained. Our focus on review is thus directed toward this exclusion, and the issue is *whether* appellants did or did not suffer any "loss or damage" by reason of this defect. The issue does not concern the proper measure of damages or whether appellant's proof was legally sufficient to support its claim as to the monetary amount they might be entitled to recover. This distinction is one of significance because it is the insurer, not the insured, which bears the burden of proving that the insured's claim falls within an exclusion found in the policy. *Reynolds v. Shelter Mutual Ins. Co.*, 313 Ark. 145, 852 S.W.2d 799 (1993). At this juncture, I must add that, although appellee contends in its brief that appellants' proof of damages was insufficient, the trial court made no alternative finding on that basis, and we cannot make such a finding ourselves on appeal, since we do not review circuit court cases *de novo* on the record. *See Charleston School District No. 9 v. Sebastian County Board of Education*, 300 Ark. 242, 778 S.W.2d 614 (1989).

Turning now to the merits of this case, the trial court's determination that appellants suffered no loss or damage is based on its view that appellants "got exactly what they paid for, a piece of property with no right of access by land." The trial court also stated in its order that it "rejects the Plaintiffs' argument that discovery of an old Quitclaim Deed obviated the application of the exclusions above. Plaintiffs' written (agreed upon) acknowledgment in the Offer and Acceptance that the property had no right of access is not cured by any belief Plaintiffs may have had about the affect [sic] of the old deed." The trial court's findings and conclusions are erroneous because they are not supported by the evidence or the law that pertains to this subject. For these reasons, I must dissent.

In negotiating the purchase of this property, appellants were advised that the land had no "permanent legal easement." For that reason, the offer and acceptance contained a special condition that gave the appellants the authority to acquire an easement, and the right to rescind the offer if they were unable to obtain an ease-

ment in six months, or if the cost of obtaining an easement exceeded $5,000. Pursuant to this agreement, appellants attempted to purchase a right of access from the surrounding land-owners, without success. They then pursued an action in county court. During the course of that proceeding, one of the landowners produced a 1971 quitclaim deed, filed of record, which purported to convey a right of ingress and egress to the property.

Upon the discovery of this deed, appellants went forward with the purchase of the property. After consummation of the sale, however, appellants were denied access over the right of way granted in the deed. They then filed suit, on their own, to enforce the provisions of the deed against the landowner.[1] After receiving an adverse determination, they appealed to the supreme court, which affirmed the decision that the conveyance in the deed was personal, and did not run with the land.

There is no dispute in the evidence that appellants purchased the property in reliance on the 1971 deed. The appellants did not, and I repeat, did not, purchase a piece of property believing or knowing that there was no right of access. There is no evidence in this record even to suggest that appellants had any reason to believe that the deed would not provide them with access. Even a title examiner, who worked for Wilson & Associates, testified that anyone who looked at the deed would conclude that access was available to the property. Inexplicably, the trial court's ruling was made as if the facts were frozen in time, limited to the state of affairs as they existed when the offer and acceptance was negotiated. However, the subsequent discovery of the deed, appellants' reliance on it, and their efforts to enforce it are facts that cannot be ignored or deemed insignificant.

The simple truth is that appellants relied on the deed as providing access to the property. Their innocence or good faith reliance on the deed is strengthened by the fact that they filed suit to enforce its provisions and pursued that action all the way to the supreme court.

---

[1] Appellants' counsel forwarded an advance copy of the complaint for declaratory judgment to Wilson & Associates, which advised appellant's counsel that the claim was in the nature of a tort, a loss not covered under the policy.

The only evidence that might arguably support the trial court's finding is appellant Riffle's testimony that the property was purchased at a discount. However, that reasoning is fallacious because the offer and acceptance was premised on access eventually being acquired, and it also took into account the cost of obtaining an easement. In order for a price reduction to take on any meaningful significance, there should be proof that the purchase price reflected the value of an unimproved piece of property in the area, without access. This record leaves us to speculate, since appellee, which bore the burden of proof, offered no evidence to support this assertion. The trial court's finding that appellants purchased the property knowing that it was without access is clearly erroneous.

The trial court gave no explanation for its conclusion that appellants had no right to rely on the deed. As discussed above, on this record it can only be said that appellants' reliance on the deed ultimately proved to be mistaken. Under the law, however, appellants had the right to rely on the professional judgment of their title insurer. As we said in *Bourland v. Title Ins. Co. of Minn.*, 4 Ark. App. 68, 627 S.W.2d 567 (1982):

> The purpose of title insurance is to protect a transferee of real estate from loss through defects clouding his title. The issuance of the policy is predicated upon an examination of the public records as to the insured title for when a person seeks title insurance he expects to obtain a professional title search and opinion as to the condition of his title. Accordingly the insurer had a duty to search the records for clouds and other defects before issuing its policy.

*Id.* at 73, 627 S.W.2d at 570 (citations omitted). Since appellants had the right to rely on the insurer's expertise, they cannot be faulted for placing reliance on the title examination. Although an exclusion can insulate the insurer from liability where the loss results from the insured's own intentional, illegal, or inequitable conduct, *Mattson v. St. Paul Title Co. of the South*, 277 Ark. 290, 641 S.W.2d 16 (1982), the trial court made no finding that appellants were guilty of such conduct.

The policy issued by appellee insured against loss or damage resulting from the lack of a right of access. Appellants are without

access by land to the property they purchased, through no fault or contrivance of their own. It is absurd to say that appellants have sustained no "loss or damage" resulting from this defect. As written in a letter by the insurer's own general counsel, "If the appeals court affirms the trial court's decision, we would likely face a loss of full policy limits with few alternatives. The statutory procedure through county court to establish a road of necessity is not a guaranteed solution and the costs would likely approach policy limits." The trial court's decision is clearly erroneous and should be reversed.

I am authorized to state that Judges AREY and JENNINGS join in this opinion.