Charles BURKETT  *v.*  Martha BURKETT

CA 05-957                                          236 S.W.3d 563

Court of Appeals of Arkansas
Opinion delivered May 31, 2006

*Tripcony Law Firm, P.A.*, by: *James L. Tripcony*, for appellant.

*Floyd Healy*, for appellee.

JOHN B. ROBBINS, Judge. This tort litigation springs from a post-divorce dispute between appellant Charles Burkett and

his former wife, appellee Martha Burkett, over Martha's right to be on the premises of the former marital residence. Charles brings this appeal from a judgment of the Pulaski County Circuit Court, following a bench trial, awarding Martha compensatory damages of $21,600 and punitive damages of $10,000 for the torts of outrage, malicious prosecution, and abuse of process.[1] Charles raises two points: that the trial court should have dismissed Martha's complaint pursuant to Ark. R. Civ. P. 12(b)(6) because she failed to state facts upon which relief could be granted, and that the trial court's award of damages was clearly against the preponderance of the evidence. We affirm.

The parties were divorced after more than thirty years of marriage by a decree entered on February 20, 2002. Among other things, the decree provided that Charles was to have sole possession of the marital house until November 2002, at which time the house was to be listed for sale.

On September 19, 2002, Charles signed an affidavit for a warrant for Martha's arrest, alleging that he had been informed by neighbors that Martha attempted to enter the residence on September 18, 2002, without his permission. The affidavit also stated that Charles did not currently reside in the home. Martha was charged with criminal trespass.

On October 3, 2002, the divorce court entered an order from a hearing held on August 29, 2002, providing that the parties were to list the former marital residence for sale as of September 30, 2002, earlier than originally provided in the decree. The order also provided that Charles was to deliver certain personal property awarded to Martha, with the transfer to take place at the residence on September 7, 2002.

On December 4, 2002, the criminal-trespass charges were dismissed in the District Court of Jacksonville, Arkansas. The records concerning the charges were later expunged and sealed. After the dismissal of the charges, Martha filed the present suit on July 17, 2003, asserting causes of action for abuse of process, malicious prosecution, and outrage or the intentional infliction of emotional distress. The complaint asserted that Charles, in seeking the arrest warrant, withheld material information from the police and the prosecutor in his affidavit and that the criminal charges

---

[1] The trial court offset a previous award of $500 to Charles, resulting in a net judgment of $31,100. The basis for this setoff is not explained.

were designed to harass her in the divorce action, in retaliation for the divorce court awarding her a part of Charles's retirement and disability benefits, and was done without probable cause. Charles answered, admitting that he signed the affidavit leading to Martha's arrest but denying the remaining allegations of the complaint. He also filed a motion to dismiss the complaint for failure to state facts upon which relief could be granted. After a hearing on the motion in which Charles argued that Martha failed to allege facts showing that she had the right to be on the premises, the trial court denied the motion.

The case was tried to the court without a jury. Martha testified that the divorce decree did not prohibit her from going on the property, adding that Judge Gray told her that she could inspect the home prior to sale. She admitted that, accompanied by a paralegal from her divorce attorney's office, she went to the property but did not attempt to enter the house and did not damage anything. She said that she understood that the divorce decree provided that Charles was to have sole possession of the house and that the October 22 order did not change that but merely shortened the time of sole possession. She stated that, although she never discussed the matter with Charles, he had consistently maintained that she had no right to be on the property on September 18.

On cross-examination, Martha said that she did not know if Judge Gray's statement that she had the right to inspect the property was contained in any order. She also relied on language from the October 2002 order providing that Charles would be responsible for any damage to the house to support her theory that she had the right to be on the property, asking how she would know if there was damage to the house unless she could inspect. Martha said that, pursuant to the October 2002 order, she was allowed to go onto the property to retrieve her personal property but stated that she did not go into the house. She also stated that there was no other language in any order authorizing her to go onto the property after the September 7 date but said that she did not realize that she needed Charles's permission.

Martha further testified that, on September 23, 2002, while at work, she was served with a warrant for her arrest and that she went home to gather her documents before going to the police station. She stated that Charles knew where she lived but sent the police to her work to embarrass her in front of her employer and coworkers and that she was, in fact, embarrassed, scared, angry,

and humiliated and had no idea why she was being arrested for criminal trespass. Martha hired an attorney to represent her on the criminal charges at a cost of $400; the charges were ultimately dismissed. She hired another attorney to have the charges expunged at a cost of $1,200.

Martha stated that Charles's affidavit did not advise the prosecutor that the parties were in the midst of divorce or that she had the right to go on the property to inspect it prior to sale. She described Charles as being upset with Judge Gray's decisions regarding the division of his retirement and disability benefits in the divorce case. She assumed that Charles swore out the warrant in order to embarrass her but added that Charles never told her that he filed charges to harass her or to "get her" in connection with the divorce.

Martha said that, after the charges were filed, she started having problems with her mental and physical conditions in that she was restless, nervous, scared, and had lost sleep over the incident. She stated that she sought professional help with emotional problems and with lack of sleep and was prescribed medication, which did not completely help. She was also prescribed other medications that helped until she made the decision to stop taking them. She said that she had been losing sleep since Charles filed the divorce action. She also said that it was hard to separate the stress in general caused by her relationship with Charles from that resulting from the criminal charges. Other than sleep problems, she said she suffered no other health problems stemming from her arrest. She also stated that she feared that her nursing license was in jeopardy. Martha admitted testifying in her deposition that the emotional distress caused by her arrest was "very embarrassing but not extreme" but disagreed with the accuracy of the statement.

Charles was called as a hostile witness by Martha and denied that there was any animosity toward Judge Gray as a result of her rulings but said that he had appealed the rulings. He said that he spoke with Martha only one time during the divorce, with other communications going through the parties' attorneys. Charles stated that he advised Martha's attorney to call so an appointment could be made if Martha wanted to inspect the property. He also said that he had two or three conversations with neighbors concerning Martha's being on the property, with one neighbor indicating that she attempted to enter the house. He stated that he was concerned because Martha might damage the house prior to

sale and that one neighbor said Martha was destroying property. Charles said that he did not file a contempt motion in the divorce court because he did not see the need to do so. He described Martha's presence at the marital residence as a form of harassment toward him, adding that he had her arrested because she should not have been there. Charles conceded that there was no order from Judge Gray indicating that Martha could not be on the property other than the decree's provision that he had sole possession of the house. On cross-examination, he denied that Judge Gray gave Martha the right to inspect the property prior to the sale.

Although he could not recall an exact date, Charles said that he had personal knowledge that Martha had entered the house because she would not have otherwise known about the replacement of the stove and refrigerator. He said that this was true even though Martha testified that she was told about the appliances. He also gave contradictory testimony concerning whether he had given permission for Martha and a realtor to inspect the house, stating that he had given such permission before stating that he did not give permission. He testified that he instructed the realtor not to let Martha in the house without his permission.

Charles denied feeling anger or hostility towards Martha, expressing concern that she was going to break into the house because she had had Charles's son do it before. He also stated his belief that she was guilty of criminal activity by trespassing onto the property. He denied that there was any other way to keep Martha from entering the property, adding that, even though he discussed Martha's entry on the property with his attorney, the thought of a motion for clarification in the divorce court never crossed his mind.

According to Charles, he did not know where Martha resided in September 2002. He said that he told the prosecutor or sheriff's office that his only method of contacting Martha was through her place of employment. In support of his statement in his affidavit that he informed Martha that she was not to be at the residence, Charles said that he told Martha and her attorney in the courthouse hallway that Martha should not be at the house without his permission. He also denied testifying falsely at the criminal trial. Charles stated that he believed that the divorce decree gave him sole possession of the residence and that this meant Martha had no right to enter the property. He showed the prosecutor the divorce decree, which led to the issuance of the arrest warrant. According to Charles, there was not an order from

the divorce court providing for joint possession of the property after its listing. He said that he did not mention the August 2002 hearing that resulted in modification of the divorce decree to the prosecutor because he did not see the need to do so.

Charles said that he did not want Martha on the property because he had it ready for sale and did not want her to interfere with the steps he had taken. He took other steps to protect the property, such as changing the locks, installing deadbolts, and using an alarm system. He said that he did not have his son arrested when he broke into the house to assist Martha.

C.J. Jacobs, a paralegal for Martha's divorce attorney, said that she accompanied Martha to the marital residence in September 2002. She stated that she was not aware of anything that would have prevented Martha from going on the property for an inspection but denied attempting to enter the home. Jacobs was present when Martha met with her attorney to discuss the criminal charges and described Martha's mental condition as being "completely distraught," adding that Martha was shaking so severely that she could hardly speak. She stated that she spoke with Martha daily and that each conversation involved how traumatized she was by this incident. She also said that Martha's mood did not appear to change.

At the close of Martha's case, Charles made a motion to dismiss for failure to present a *prima facie* case and for insufficient evidence to support a verdict in Martha's favor. After arguments of counsel, the trial court denied the motion.

The trial court ruled from the bench, finding that there was nothing in the divorce court's orders prohibiting Martha from going onto the property. The trial court noted that the proper course of action would have been for Charles to file a motion in the divorce court. The court found that Charles acted to harass, embarrass, and humiliate Martha and that she suffered emotional distress in that she was scared, angry, and humiliated. The court noted the failure of the neighbors, upon whom Charles based his affidavit, to testify. The trial court then awarded Martha $1,600 for her attorney's fees in the criminal case, $20,000 in compensatory damages for emotional distress, and $10,000 in punitive damages. Judgment was entered accordingly, and this appeal timely followed.

For reversal, Charles argues that the trial court erred in not dismissing Martha's complaint for failing to state facts upon which relief could be granted and that the trial court's decision to award

damages is against the preponderance of the evidence. Charles did not make a motion for additional findings of fact. He also does not challenge the trial court's findings as to the amount of damages. Therefore, because we hold that Martha's cause of action for malicious prosecution is affirmable, we will only address that action inasmuch as an affirmance of any one of the causes of action involved in this proceeding will result in an affirmance of the entire judgment. *See Costner v. Adams*, 82 Ark. App. 148, 121 S.W.3d 164 (2003).

In his first point, Charles argues that the trial court erred in not dismissing Martha's complaint pursuant to Ark. R. Civ. P. 12(b)(6). In reviewing the trial court's decision on a motion to dismiss under Ark. R. Civ. P. 12(b)(6), we treat the facts alleged in the complaint as true and view them in the light most favorable to the party who filed the complaint. *Arkansas Dep't of Envtl. Quality v. Brighton Corp.*, 352 Ark. 396, 102 S.W.3d 458 (2003); *Clayborn v. Bankers Standard Ins. Co.*, 348 Ark. 557, 75 S.W.3d 174 (2002); *Martin v. Equitable Life Assurance Soc'y*, 344 Ark. 177, 40 S.W.3d 733 (2001). In testing the sufficiency of the complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and the pleadings are to be liberally construed. *Clayborn, supra*. Our rules require fact pleading, and a complaint must state facts, not mere conclusions, in order to entitle the pleader to relief. *Id.*; Ark. R. Civ. P. 8(a). We look to the underlying facts supporting an alleged cause of action to determine whether the matter has been sufficiently pled. *Arkansas Dep't of Envtl. Quality v. Brighton Corp., supra*. In the present case, Charles argues that Martha failed to plead facts as to at least one element of each cause of action.

Charles argues that Martha failed to set forth facts showing that he lacked probable cause to institute the criminal charges. In her complaint, Martha alleged that Charles caused her "to be arrested on false criminal charges knowing the charges were false. . . ." In the context of malicious prosecution, probable cause means such a state of facts or credible information which would induce an ordinarily cautious person to believe that the accused is guilty of the crime for which he is charged. *Harold McLaughlin Reliable Truck Brokers, Inc. v. Cox*, 324 Ark. 361, 922 S.W.2d 327 (1996); *Cordes v. Outdoor Living Ctr., Inc.*, 301 Ark. 26, 781 S.W.2d 31 (1989). If Charles knew the charges to be false, then he did not have probable cause to seek Martha's arrest. This is sufficient to plead the lack of probable cause. *Foster v. Pitts*, 63 Ark. 387, 38

S.W. 1114 (1897); *Delgado v. Rivera*, 57 P.2d 1141 (N.M. 1936). We affirm on Charles's first point.

For his second point, Charles argues that the trial court's decision to award Martha judgment is against the preponderance of the evidence. The standard that we apply when reviewing a judgment entered by a circuit court after a bench trial is well established. We do not reverse unless we determine that the circuit court erred as a matter of law or we decide that its findings are clearly against the preponderance of the evidence. *Vereen v. Hargrove*, 80 Ark. App. 385, 96 S.W.3d 762 (2003); *Riffle v. United Gen. Title Ins. Co.*, 64 Ark. App. 185, 984 S.W.2d 47 (1998). Disputed facts and the determination of the credibility of witnesses are within the province of the circuit court, sitting as the trier of fact. *Id.* Charles argues that Martha failed to prove at least one element of each of her three causes of action.

In order to establish a claim for malicious prosecution, a plaintiff must prove the following five elements: (1) a proceeding instituted or continued by the defendant against the plaintiff; (2) termination of the proceeding in favor of the plaintiff; (3) absence of probable cause for the proceeding; (4) malice on the part of the defendant; and (5) damages. *South Ark. Petrol. Co. v. Schiesser*, 343 Ark. 492, 36 S.W.3d 317 (2001); *McLaughlin v. Cox*, 324 Ark. 361, 922 S.W.2d 327 (1996). Here, Charles challenges only Martha's proof on the probable-cause element, arguing that she offered speculation only as to why he signed the affidavit. The trial court could consider all of the information available to Charles in deciding whether there was probable cause for initiation of the criminal charges. *First Commercial Bank v. Kremer*, 292 Ark. 82, 728 S.W.2d 172 (1987). The trial court indicated that it did not believe that the divorce decree gave Charles exclusive possession of the residence.

■ The trial court could have also considered Charles's failure to seek clarification in the divorce court as evidence of the lack of probable cause in a fashion similar to a shopkeeper's policy of automatically prosecuting suspected shoplifters without regard to their explanations. *See Wal-Mart Stores, Inc. v. Yarbrough*, 284 Ark. 345, 681 S.W.2d 359 (1984); *Wal-Mart Stores, Inc. v. Williams*, 71 Ark. App. 211, 29 S.W.3d 754 (2000). Further, the trial court could find that Charles failed to make a full and fair disclosure of all the information concerning the divorce case and that this failure also showed a lack of probable cause. *South Ark. Petrol. Co. v.*

*Schiesser, supra.* Here, Charles admitted that there was information he did not disclose to the prosecutor because he, Charles, did not think it relevant. That information, had it been disclosed, may have caused the prosecutor not to authorize the issuance of the arrest warrant. Because there was evidence from which the trial court could have concluded that probable cause for Martha's arrest was lacking, we affirm on this point.

Affirmed.

GLADWIN and BIRD, JJ., agree.